ALASKA STATE COMMISSION FOR HUMAN RIGHTS, Janet L. Bradley, Executive Director, ex rel. Laurel Beamer, Mary Ann Berry, Elinore Jacobsen, Kathryn Kindt, Mary Ann Laroe, Janet Lokken, Eileen Maki, Vernellia Randall–Phillips, Dorothy Straub, Janice Todd, Constance Trollan, and a Class of Public Health Nurse I's and II's, Appellants,

v.

STATE of Alaska, DEPARTMENT OF ADMINISTRATION, and Department of Health and Social Services, Appellee.

No. 3619.

Supreme Court of Alaska.

July 27, 1990.

Mark A. Ertischek, Alaska State Commission for Human Rights, Anchorage, for appellants.

Susan D. Cox, Asst. Atty. Gen., Juneau, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Garen E. Dodge, McGuiness & Williams, Washington, D.C., and Parry Grover, Davis, Wright & Jones, Anchorage, for amicus curiae Equal Employment Advisory Council.

Richard G. Haggart, Maloney & Haggart, Anchorage, Paul F. Mickey, Jr. and Ellen M. Jakovic, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for amici curiae Women's Legal Defense Fund, National Committee on Pay Equity, American Federation of Government Employees, AFL–CIO, American Federation of State, County and Municipal Employees, Americans for Democratic Action, B'Nai B'Rith Women, Center for Women Policy Studies, Department for Professional Employees, AFL–CIO, Federally Employed Women, Inc., Humboldt County Public Employees' Ass'n, AFSCME Local 1684, Industrial Union Dept., AFL–CIO, International Ladies' Garment Workers' Union, AFL–CIO, National Ass'n of Commissions for Women, National Ass'n of Social Workers, Inc., National Institute for Women of Color, NC Equity, New England Health Care Employ-

ees Union Dist., 1199 SEIU, 9 to 5, National Ass'n of Working Women, Organization of Pan Asian American Women, Service Employees Intern. Union, AFL–CIO, CLC, United Food & Commercial Workers Intern. Union, AFL–CIO, CLC, Women Employed, and Women on the Job, a Project of Resources for Program Development, Inc.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This case involves the interpretation of AS 18.80.220(a)(5), specifically the meaning of the phrase "work of comparable character." At a hearing following a complaint by a group of public health nurses, the Alaska State Commission for Human Rights (HRC) interpreted AS 18.80.220(a)(5) to require equal pay for jobs of comparable value to the employer. The superior court reversed the decision on appeal. We affirm in part and remand in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1978 and 1979, 11 public health nurses (PHNs) filed claims with the Alaska State Commission for Human Rights. The PHNs, allegedly all of whom are women, claim that they were paid less than physician's assistants (PAs), allegedly all of whom are men, in violation of AS 18.80.-220(a)(5) (hereinafter (a)(5)), which provides:

> (a) It is unlawful for
>
> . . . .
>
> (5) an employer to discriminate in the payment of wages as between the sexes, or to employ a female in an occupation in this state at a salary or wage rate less than that paid to a male employee for work of comparable character or work in the same operation, business or type of work in the same locality;

The HRC appointed a hearing examiner to review the complaints. Based on the pre-enactment history of the statute, the hearing examiner determined that the phrase "comparable character" found in (a)(5) only required equal pay for equal work. The hearing examiner also determined that although the two positions were roughly comparable in terms of the skill and effort required, the PAs had more responsibility than non-practitioner PHNs and more onerous working conditions.

Following review of the record by independent counsel the HRC reversed the decision of the hearing examiner. The HRC ruled that the phrase "work of comparable character" should be interpreted as work of comparable value to the employer. The HRC also accepted the conclusion of the PHNs' expert that the PHN position was "at least comparable" to the PA position.

The superior court, sitting as an intermediate appellate tribunal, Alaska Appellate Rule 601, reversed the decision of the HRC. The superior court concluded that there was no evidence to support the HRC's decision that the Alaska legislature intended "comparable work" to mean something more than equal work. The court added that the PA and PHN positions were clearly not equal.

The HRC appeals. The HRC's points on appeal include the assertion that the superior court erred in holding that (a)(5) only allows comparisons between jobs which are substantially identical, rather than between similar but not identical jobs in which the required skills, responsibilities, effort and working conditions are comparable in character.

## II. STANDARD OF REVIEW

■ The HRC urges this court to use the rational basis test in reviewing its interpretation of AS 18.80.220(a)(5). As support, the HRC points to *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896 (Alaska 1987). In *Tesoro*, we held that the rational basis test is to be used where the question at issue involves special agency expertise or the "determination of fundamental policies within the scope of the agency's statutory function." *Id.* at 903. The HRC claims that due to its expertise and its need to determine fundamental poli-

cies by interpreting (a)(5), the rational basis standard should be applied.

The state urges us to adopt the independent judgment standard of review. It argues that interpreting (a)(5) does not require agency expertise or implicate the policy making ability of the HRC. The state also contends that the legislature's act of giving the superior court concurrent jurisdiction over claims brought under AS 18.80 demonstrates an intent to not vest the HRC with discretion to interpret the statute.

Assuming *arguendo* that the interpretation of (a)(5) requires agency expertise or involves fundamental policy making, the HRC's joint jurisdiction with the superior court requires this court to use the independent judgment standard of review. AS 22.10.020(i) [1] gives the superior court original jurisdiction over claims arising under AS 18.80. Although the HRC may intervene as a party to the action, it is not required to do so.[2] If such a claim were filed in the superior court, a subsequent appeal to this court involving a question of statutory interpretation would have to be reviewed under the substitution of judgment test. *See Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979). If this court were to hold that the HRC's interpretation of a statute is subject to the rational basis standard, rather than the independent judgment standard of review, it could result in disparities when reviewing judgments on appeal. Therefore, we must review appeals involving questions of law from the superior court and the HRC under the same *de novo* standard of review, in order to insure uniformity of decision.

## III. DISCUSSION

In its decision, the HRC stated that the phrase "comparable character" found in (a)(5) required equal pay for work of equivalent worth to the employer.[3] The state, on the other hand, claims that (a)(5) should be interpreted as requiring equal pay for equal work, not as a comparable worth statute. In support of this assertion, the state cites the available legislative history of (a)(5), as well as the language of (a)(5) itself.

We find the history of (a)(5) instructive in interpreting the term "comparable character."

> The events occurring immediately prior to the time when an act becomes law comprise an instructive source, indicative of what meaning the legislature intended. Therefore, the history of events during the process of enactment, from its introduction in the legislature to its final validation, has generally been the first extrinsic aid to which courts have turned in attempting to construe an ambiguous act.
>
> The contemporary history of events during this period consists chiefly in statements by various parties concerning the nature and effect of the proposed law and statements or other evidence on the evils to be remedied.

(Footnotes omitted). 2A N. Singer, *Sutherland Stat. Const.* § 48.04 (4th ed.1984).

In 1949, the Commissioner of Labor wrote territorial Governor Gruening regarding upcoming labor legislation. The letter described a legislative proposal that would "[provide] that women shall be paid the same wage as men for the same work...." That same month Governor Gruening addressed a joint session of the

---

1. AS 22.10.020(i) reads in pertinent part:

   The superior court is the court of original jurisdiction over all causes of action arising under the provisions of AS 18.80.

2. AS 18.80.145(a) reads in pertinent part:

   When an action is brought under AS 22.10.-020(i), the plaintiff shall serve a copy of the complaint on the State Commission for Human Rights. Upon timely application, the commission may intervene as a party to the action as a matter of right.

3. In its reply brief, however, the HRC begins by stating that it did not adopt the doctrine of comparable worth. Instead, the HRC's reply brief asserts that (a)(5) is simply an analog of the federal Equal Pay Act (EPA), although it claims it should be construed more broadly than the EPA. This claim is made despite the several times the HRC decision uses the terms comparable worth/value. In addition, the original HRC brief attempted to persuade the court that (a)(5) permitted the comparison of jobs that are "not substantially equal."

legislature, at which he outlined his goals for the future, including the following:

> Equal pay for equal work is a desirable principle. At the present time in certain industries women are paid less than men—although they perform essentially the same work. I believe that should be rectified. All our labor legislation should be re-examined in the light of present-day requirements.

1949 Senate Journal 63. Legislation "pertaining to equal pay for female employees" was introduced within a week of the governor's speech, *id.* at 103, and passed by both the Senate, *id.* at 268, and the House, 1949 House Journal 476, within a month. This legislation read:

> Section 1. WAGE RATES. No employer shall discriminate in any way in the payment of wages as between the sexes, or shall employ any female in any occupation in this Territory at salary or wage rates less than the rates paid to male employees for work of comparable character or work in same operations, business, or type of work in the same locality.

Ch. 29, § 1, SLA 1949.

When Alaska became a state, the Act was codified at former AS 23.10.155. The only change made was the replacement of "this Territory" with "this state." *Compare* ch. 29, § 1, SLA 1949 *with* former AS 23.10.155. When the HRC was created in 1963, its establishing legislation incorporated former AS 23.10.155 by reference. In 1965 reference to AS 23.10.155 in the HRC's establishing legislation was deleted, but nearly identical language was reenacted at AS 18.80.220(a)(5).

The HRC stated that it did not consider this evidence conclusive as to the legislative intent behind the statute. First, the HRC noted that the governor's speech did not specify the legislation to which he was referring, and thus termed his remarks "general." Second, since no comments of legislators were cited, the HRC argued that it was difficult to determine with any accuracy the intent of the legislature.

The HRC argues that a clearer indication of the meaning of (a)(5) may be gleaned by looking to the Congressional debates over the wording of the Equal Pay Act, 29 U.S.C. § 206(d)(1) (1982) (EPA). From 1962–63, Congress debated the EPA. Part of the debate was over the terms "comparable" and "equal." Congress eventually chose to use the term "equal" due to concern over the broader meaning of the term "comparable." *See, e.g., Gerlach v. Michigan Bell Tel. Co.*, 501 F.Supp. 1300, 1309 (E.D.Mich.1980). The HRC claims that since AS 23.10.155 was recodified at AS 18.80.220(a)(5) following the EPA debates, the Alaska legislature must have known of, and approved of, the meanings attached to the terms by the United States Congress.

The HRC also asserts that the "comparable character" language in the second clause of (a)(5) must mean more than equal pay for equal work since that is the meaning of the first clause in (a)(5).[4] Presuming that "every word, sentence, or provision was intended for some useful purpose," and that "no superfluous words or provisions were used," *Alaska Transp. Comm'n v. AIRPAC, Inc.*, 685 P.2d 1248, 1253 (Alaska 1984), the HRC argues that if the "comparable character" language is read to mean the same as the first clause of (a)(5), then the "comparable character" language would be superfluous. As this is impermissible under *AIRPAC,* the HRC contends, a different meaning must be given to "comparable character."

We disagree. The first clause of (a)(5) should be interpreted as prohibiting intentional discrimination in the payment of wages. The lack of any language regarding the equality of jobs in the first clause precludes interpreting it as an equal pay for equal work provision. Furthermore, the history of (a)(5) convinces us that the proper interpretation of the phrase "comparable character" is as an equal pay for

---

**4.** The first clause of (a)(5) makes it unlawful to "discriminate in the payment of wages as between the sexes...."

*substantially* equal work provision.[5] Although no comments of legislators were cited, the comments of both the territorial Governor and Commissioner of Labor provide a persuasive indication of the legislature's understanding of the phrase "comparable character." The fact that (a)(5) is a virtual duplicate of the 1949 Act reasonably suggests that (a)(5) was meant to mean the same.

We remand the question of the substantial equality of the PA and PHN positions so that the HRC may re-examine its decision in light of our interpretation of (a)(5).

## IV. CONCLUSION

The decision of the superior court is AFFIRMED in part and REMANDED in part.

---

5. The use of the phrase "of comparable character" further persuades us that (a)(5) was not meant to apply only to jobs that are identical, but rather was intended also to apply to jobs that are substantially equal in terms of composite skill, effort, responsibility, work conditions and other material aspects.